I'm going to reserve five minutes of my time for a vote. May it please the court? My name is Casey Donovan. I represent the appellant Chan-Astorga. Can I ask you to speak up? My name is Casey Donovan. I represent the appellant Chan-Astorga, Ramon Chan-Astorga, who has waited a long time for this day. He's almost five years into his sentence. There were some prior problems with counsel, etc. The appellant's position that the bulk marijuana was destroyed, in this case by the government, the district court's ruling that it was in bad faith, was proper. Our argument is that the remedy was not sufficient, that the indictment should have been dismissed based upon the egregiousness of the specific facts of this case, that the government essentially used to great effect the physicalness of the marijuana, the way it was packaged, the colors, the fact that there was a package that had something to do with dog food, how it met up with the two ledgers that were found on Mr. Chan-Astorga and on the co-defendant Soto Gaxiola, in such a way that it made it very difficult for Mr. Astorga to defend that. They had a photograph of it, but they didn't take any other means to preserve it so the defendants could look at it. Essentially they were saying, there's the marijuana, he's got a ledger on him that has the exact same amounts and colors, the other individual has one, they're in this together, it's a conspiracy. He didn't have an opportunity to examine that bulk marijuana, the coloring, the packaging, to see whether those things met. The instruction was insufficient to cure the error in this case. We think the facts under Fisher and Youngblood, there was a motion made to preserve the evidence, the evidence was destroyed, the judge made a finding, and so we agree with the judge's finding, but not with the ultimate resolution. Your Honor, has any other questions about that? Just this question, the Supreme Court has, over the past few years, has cautioned the lower courts, we among them, that in instances like this, that outright dismissal is too severe a sanction. Did you at trial or your predecessor counsel suggest lesser sanctions short of outright dismissal? Well, they did, and that's, as the government has pointed out, once it was the denial, the dismissal, the indictment was not chosen, they had offered an alternative, the instruction. The instruction that they offered said that it was presumed that it would be helpful to the defendant, and the instruction that was given was not that strong, so obviously I have an objection to that, but I agree that it's a tough road to hoe. The problem here is that here's a guy who's doing 14 years in the slammer for this case, where, as you can see from the overall case, he has people testifying against him, people not, it's hard to defend, and in conjunction with the other issues of the severance, I think, it brings into the forefront how egregious, from Mr. Astorga's point of view, the instruction was. Be that as it may, it may have been that if he had gone and seen it, it would have been exactly as the government had said, but we don't think that's the test. The test is how they used it against the defendant, the individual, and it's sort of like it's gone, and so the ability in this case to defend, for instance, to say that dog food was a different brand or was a different wrapper or the colors aren't the same colors, or anything that would have at least made a reasonable argument to the jury in the defense was not possible. Are you gambling all or nothing? Excuse me? Are you gambling all or nothing, a dismissal or nothing? That was your argument in your briefs, and I want to know whether or not that's your position now. I think it's essentially it. Mr. Hawkins asked you a question, and I didn't understand your answer to it. I'm framing it differently. Is it yes or no? I believe it's all or nothing here. I assume the court is saying that the fallback position would be that the instruction was too weak, given to the jury in this case, that by saying that they don't have to find it would be helpful or you only have to presume it was insufficient. I share that position, but I think the court looking at it is probably less likely to say that, given the similarity of the two positions that we're going to reverse based on a nuance in the charge. So, as a matter of fact, I think in this case, given the distinct factors of this case, that was the proper remedy.  And also, just briefly, the Crawford case, and I believe it has some application here. We have a situation here where only one person testified that Mr. Chanastorga did anything, and that was the one person who said he unloaded the marijuana, and he was heavily impeached because he had never identified Mr. Chanastorga until he had been cooperating for months, had never said anything in any of his debriefings. No one else was called that had said anything about Mr. Chanastorga, but these, what I am referring to as testimonial myths of evidence, the ledger from the co-defendant, the phone number from the person who wasn't arrested, had serious impacts, implications on Mr. Chanastorga here, and they, as we see it, are Crawford issues, because essentially what they did is they took the telephone number on a business card and put the co-defendant, Mr. Mikada's statement in, to say, Lalo tells me I'm supposed to tell the couriers to call me if they have questions. He didn't testify, and that's why we raised the Bruton issue. Then they, Gallardo takes the fifth and doesn't testify, yet the government's allowed to argue very persuasively that the phone number on the business card was there because he was a member of the conspiracy and was delivering marijuana to Mr. Hernandez as part of the conspiracy, whereas in reality, the only person who can really testify to that is Gallardo. Just get on the stand and say, yes, that's my business card, and this is the reason that phone number was on there, and he didn't do that, and we think under the Crawford that's a serious problem. The same thing with the ledger that Mr. Soto had, the co-defendant. They don't bring the co-defendant in. They bring in a ledger and say it's exactly the same, and the reason he had is because they're acting together now. If Mr. Soto had cooperated and said that, that would be testimonial and it would be proper, but for them not to testify and for the government to be able to take that and basically testify through their government witnesses as to why it was there and what it meant, we think comes into the Crawford issue in this case and in sort of a combination of why it was improper to have him not severed in the context of this case. Do you want to talk about that jury instruction? As to what? If you don't want to talk about it, just say you don't want to talk about it. As to the... You may presume. Right. That jury instruction. The jury instruction with respect to the... Ever heard of a jury instruction saying that juries can presume? Yes. That's a valid jury instruction? Well, there's... There's a presumptive instruction, but I... What's that? There's instructions that say... Is it an instruction that says to the jury, you may presume? No. Is that a valid instruction? I thought jurors were instructed to find facts, not presume anything. That's correct, Your Honor. But here they're instructed to presume that, as I... I'll just briefly... I'll find it on rebuttal, Your Honor. But obviously it's interesting to you, so I'm concerned that I'm not backing it correctly. I'll briefly go to the sentencing, because I think the sentencing is critical in this case. Mr. Astorg is doing 168 months at this time. It's our position that the... Obviously, he has to do 120 months, because it's a mandatory minimum under the presiding law. But the difference in that extra 48 months is because of the gun enhancement that was found by the court. And it's our position that it was error for him to find a gun enhancement under the existing law, because for the various reasons, no one else was given the gun enhancement in the case. He did not have the gun in the case. There was no evidence that he knew there was a gun in the case. And none of the other co-defendants, including the two co-defendants... In fact, the two co-defendants who had guns in the house in the case were specifically not given the gun enhancement, and they were able to have safety valve on top of it. In other words, they couldn't have gotten safety valve unless gun enhancement wasn't found. Did the government prove the amount of marijuana? The jury found it was in excess of 1,000 kilos. It was in the jury verdict form, both as to the conspiracy and as to the substantive count. Based on testimony? Based on testimony. I believe the record is that there was a stipulation. In other words, the defense counsel had argued that Buckland, et cetera, didn't apply, and Apprendi applied, but then they stipulated that the amount was 1,000 kilos. So in other words, they preserved the issue in case the court were to reverse the Apprendi-Buckland line, but then there was a stipulation that it was in excess of 1,000 kilos, and the jury verdict reflected that. To get back to the weapons analysis, the court made only a statement that I presume that the co-defendant had the gun to protect the marijuana. Well, one of the interesting things in this case is that the sentencing court was not the trial court. This was a visiting judge. Judge Reed tried the case. Judge Jones was a sentencing judge. So he didn't, and there's nothing in the record that says that he had examined the transcript of the trial prior to sentencing. So we think that's, not only did he not make any specific findings, as the case law says with respect to the enhancement, as to that person's knowledge of the conspiracy or why it would be foreseeable that he would think that the gun was involved. But in this specific case, none of the conspirators who had the gun were found to have the role enhancement. And under the law of the case argument that I've said, since the judge found those two people that the gun was not part of the case, with regard to Havens and Flavius Mercado, we think that's the law of the case. In other words, if the court is finding these guys get safety valve, and part of the safety valve is you can't have a gun involved, and he's saying that the gun is not involved for the purposes of their case, then he can't, the same court can't come back and say, I find the enhancement applies to a co-defendant who had nothing to do with the gun under this vicarious liability standard. So it's our position that he was in there. With respect to Blakely, it's also the jury never made any finding with respect to the gun, because it wasn't charged in the indictment, it wasn't an element of the offense. So the enhancement should have been found by, under Blakely, should have been found by the jury and not the judge with respect to that. And under Booker, it's our position that the sentencing has to go back to the district court, because the guidelines are no longer binding, therefore his analysis under the weapons enhancement is not binding on the court. Secondly, he found him to have a criminal, Mr. Astorga, whose only prior criminal conviction were involved with the law at all, and his whole life was a DWI that happened about 30 days before this case. That bumped him up to criminal history category 2. So it's our position that the court, under Booker, can now look at all the 3553 areas in addition to the guidelines, and therefore he could have taken into account this man's long work history, his lack of any prior criminal record, in analyzing whether it was over-represented. He made a statement that it was not over-represented, but that was under the confines of the law at the time, which couldn't take the broader scope of the man's background into effect. Also, he denied him a Cook departure in this case, which we think, in light of Booker, has to be revisited back in the district court. Roberts. You wanted to save about five minutes? Carvin. Yes, I did.   Thank you for your argument, counsel. Carvin. May I please accord David Kernel for the government? You used to be in the U.S. Attorney's Office in L.A.? I sure did. You did? Yes. I thought I recognized you. I had my first trial in Columbia in 1968. But what I'd first like to do is address the destruction of marijuana and to just touch on one subject that was brought up by defense counsel, and that is that at the time of the trial, if you'll look at the sealed declaration that was presented at the time of the motion to dismiss, the reason that the defense wanted that marijuana was not to compare the colors, nor the size, nor the bags. It was to try and show, or to demonstrate, that the 3,300 pounds of marijuana would not fit in this gentleman's pickup truck. And so it was going to be a situation where they needed the marijuana in order to substantiate the fact that he couldn't have delivered all of it on March the 29th. Well, in fact, we agreed to that. I mean, we didn't prove that at trial at all. We had testimony that there were several loads brought over to the final stash house. And so the idea now, in hindsight, that they wanted to compare the colors and the types of containers is just not what was going on at trial. But what I'd like to do is I'd like to address, as we have in our brief, the idea that this was done in bad faith. And as the Court knows, there are two separate findings that have to be found by the district court. One, that the evidence was material. It was material evidence. That is, it was apparent that its value was apparent before the destruction, and that there was nothing of comparable value. So that has to be, a finding has to be made of that. And the Court made those findings, saying that if you're trying to prove the size of the load could not have fit in the pickup truck, then obviously some photographs might not be comparable evidence. But then the Court went on to say, and I also find bad faith. And I find bad faith because I infer bad faith simply by the timing. That is, that the seizure was made, the EA per its regulations, 28 CFR 50.20, and the code section, 18 U.S. Code 988, excuse me, 881.2F or F2, they were going to destroy the evidence. And what happened was the U.S. Attorney's Office simply dropped the ball and didn't tell them to preserve it after a discovery request was made by the defense. But in order for the judge to find, under the law, in order for the judge to find bad faith, the judge has to find that the government did this, that it did the destruction with official animus, conscious effort to suppress exculpatory evidence, departing from usual procedures, and destroying evidence to obtain an unfair advantage at trial. And the Youngblood says that negligent destruction is not enough, and the Carino case from this Court says that sloppy work is not enough to show bad faith. Well, what happened here was that the Court, the defense did not put on a showing of bad faith in that context, and the Court did not make any findings of bad faith in that context. And in order to have any kind of sanction whatsoever, both of those things have to be found. We can review this because it's an Oval Review, and also this, under the circumstances of this case, that is, if there was not a suppression and there was not a dismissal, that reviewing a jury instruction is the only way that we could, at this point, that we can bring it up. And we feel— You made a mistake on that bad faith issue. Why should we send the case back for a retrial? Because it completely nullifies the reason, the jury instruction argument completely. It makes it moot. Do you agree with that jury instruction that jurors can presume things? Ah, I'm glad you brought that up, because I just read the instruction. The presumption, if the presumption runs to the government, then that's wrong. But the presumption here runs to the defense. If you read what the instruction was, the jury may presume, but does not have to. That's a permissive instruction. The evidence would have been favorable to the defendant. It's not an instruction, a presumption instruction, that runs in favor of the government. It runs in favor of the defense. And so that makes it, if the defense doesn't like to have a presumption in their favor, that's their business. But I suggest that they do, because it has more power than an assumption or anything else. So that, the idea that presume ends up in that instruction does not make it an invalid instruction. You objected to the instruction. We had our own, yes, and so did they. But now you say it's okay. Excuse me? You objected to the instruction, but now you say it's okay. We tended our own instruction, and we objected to the court's instruction. But now you say it's okay. Because we're stuck with it now, because that's what the court said. But in defending the instruction, I can say, but I'm not going to ask you to reverse because we didn't like the instruction. I'm going to say that that instruction covered the basis. And as I say, it runs in favor of the defense. Why didn't you object to it originally? Your Honor, I didn't try the case. I have no idea. Maybe it was just pride of authorship on the assistant who wrote the instruction. But I have no idea why we objected to it. But again, once again, it is a favorable instruction for the defense, not for the government. So what I said was that if you find, in fact, upon the de novo review, that the bad faith finding was improper, then we don't even have to get into the jury instruction, and we urge you to do that, because we don't want to have it thought that simply inferring bad faith is enough to carry the burden, because clearly it is not. Now, turning to the jury instruction itself, as I said, it runs in favor of the defense, and it is one of the three methods of dealing with this kind of a situation. The defense, in their supplemental memorandum, asked for it or suggested it, and so it appears that if he asked for it and he got what he asked for, maybe not in the same wording, but he got what he asked for, that he's stuck with it, and it's an invited error, and this doesn't need to be reviewed. If it is reviewed, then we suggest that his rights were protected and it correctly sanctioned the government at this level. And you might ask, well, why instruction over dismissal or suppression? Well, here the prejudice, if any, was minimal, and the reason is that we conceded the defense theory, that is, that the pickup truck that he was driving could not have carried the full 3,300 pounds, and that's the way we argued it. We didn't say that he carried the whole load over to the stash house. And not only that, but there was overwhelming evidence that he was involved in this conspiracy. And under Dring, if you have overwhelming evidence, that is sufficient to nullify any kind of finding of bad faith and or the finding of the equivalent evidence is not available. Now, with regard to the severance, the Mercado card is a red herring. That was not used by us to convict Mr. Chan. We never referred to it. Mercado never involved himself in the March transaction. He only involved himself in the November transaction. That's the only thing we used the card for. Mr. Chan was never involved with it. The fact that there's a telephone number on it had nothing to do with Chan whatsoever. So there was no reason to worry about the card. As far as Bruton is concerned, Mercado's statement only talked about himself and only talked about the November transaction. He denied being involved in the March transaction, so Mr. Chan was not involved with that statement and was not harmed whatsoever either. So there was no reason to sever Mr. Chan from Mr. Mercado because none of the evidence that came in against Mercado was spilled over onto Mr. Chan. The same thing is true of the ledger. The ledger was simply evidence of a conspiracy. It is not hearsay. It is simply that one conspirator has the same kind of – is carrying the same kind of ledger as the other conspirator. There is no testimonial from it. It's just simply laying down one document and comparing it to another, which any jury is perfectly capable of doing. Now, with regard to the sentencing, we submit that, first of all, the reason that there was a difference between the different defendants is outlined in one of my footnotes in the brief, and that is that everybody pled guilty and bargained their way out of a gun enhancement, and Mr. Mercado, even though he went to trial, after trial began to cooperate, and his sentence was adjusted as a result of his cooperation. So everybody bargained their way out of a gun enhancement except for this defendant. And so he was stuck with it. And there's no question that this Court has held that guns and drug cases go together, and there's no question that there are assumptions or presumptions that if you are involved in a drug conspiracy, there are going to be weapons involved. And sure enough, there was. And Mr. Chan asked that the weapon be introduced into evidence. Otherwise, it would have been excluded completely. But he asked that it go in. And so if you're looking at Booker and you're looking at what's reasonable, the gun was in evidence. Even if a jury had to pass on it, it would find that it was there because it was in evidence. And so there's no harm to this defendant whatsoever by having that gun there. And the judge was more than within his rights to take it into account in sentencing. You're not saying that defendants should be punished merely because they asked for a trial rather than plead guilty? No, I'm not suggesting that at all. What I'm saying is that if you go to trial and you don't bargain, you don't plea bargain or otherwise cooperate, that you're opening yourself up to the full plan of plea of sentencing options that are available to the judge. You can hold that against you? No. I'm just saying you have to know it's not being held against you. What I'm saying is that you go to trial and you are eligible for certain adjustments in your sentence, then you're open to it. I suggest to you that if, and this is pure speculation, if Mr. Mercado had not cooperated, he would have been in prison for a lot longer and would have had a gun enhancement, as would some of the other defendants that were in this. But everybody else worked their way out of it. This fellow was a minor participant, wasn't he? Well, what we know is, and that was something else I wanted to note, too, that David Mercado Hernandez in true testified that this individual helped load the marijuana that night. But the agents also observed him doing things there on site with his pickup truck. And not only that, but that same pickup truck, if you'll recall, was seen on prior occasions making runs back and forth between David Mercado Hernandez's house and the stash or, excuse me, Lalo or Haven's house with loads of marijuana. They didn't see Mr. Chan in it, but it was his pickup truck. So as far as being a minor participant, well, he wasn't observed as much as everybody else, but clearly he was part and parcel of this whole thing. That would submit. Okay. I don't see any other questions. Rebuttal? Yes. Starting with the sentencing issue first. I think this case is probably a perfect example of why the Supreme Court is correct in doing something rather drastic with the guidelines. Here we have a case where the testimony. If you would keep your voice up, it would help. Those don't amplify. This is a case where sentencing range from probation to 168 months. The government concedes they had no evidence against Mr. Chan prior to March 29th. He'd never been in trouble before in his life except for DUI. Yet he ends up with 168 months. The court does not give him a roll reduction, even though there's no evidence that he did anything except arrive that day and unload some marijuana, which is in the case notes for the guidelines, is why you should get a four-point roll reduction. If all you've done is offload or unload, they use a boat in that example, but in this example it's offloading some marijuana into a container. That's his only roll in the case. Not only does he not get minimal roll, he doesn't get minor roll. He gets no roll adjustment. The government is now saying it's perfectly proper. There's nowhere in the guidelines that says you can bargain your way out of these enhancements. There's nothing in the gun enhancement that says if the facts show X, you can bargain your way. That's essentially what happened here. Not only did they bargain that, but they were able to get safety valve out of it because of the fact that they didn't have the gun enhancement. The gun was found in Haven's home, and the gun was found in Mercado's home in a drawer that maybe didn't have anything to do with marijuana. But for those two people not to get it, and then to say under the conspiracy theory that he should get it because it's reasonable, it just doesn't work. The only dispute is the amount of marijuana that should be charged against him in sentencing. Isn't that the real issue? Well, the problem with that, I'm not disagreeing with Your Honor that that is a critical issue. But as I see it, because of the conspiracy, I assume that the district court on remand could, under the guidelines as we now have it, find that he's not responsible for 1,000 kilos, even though the jury found that. Because he could find that there wasn't any evidence as to what was in his truck. He may have just thrown a bundle or two in. And therefore, even though the conspiracy was for more than 1,000 kilos, he could find that his responsibility was less. My understanding at the time of the case, he probably couldn't have done that because the jury made a finding of 1,000 kilos under the Apprendi law as it stood. But now that the guidelines are only advisory, it's a possibility he could do that. I assume the government would probably argue that because the jury made a finding that it was 1,000 kilos and he was guilty of the conspiracy, the mandatory minimum trumps the guideline analysis. I'm not conceding that, I'm just saying that's a possibility. But yes, Your Honor is correct. The reality is there's really no evidence as to how much involvement he had. The only evidence is he drove a truck that never had any marijuana when he was arrested and someone said he had helped unload it. With respect to the role, again, we believe the court was... Well, there was all kinds of evidence about his guilt rather than in addition to the seeds and leaves in the truck. There were all kinds of evidence against him. I did not try the case, but yes, from the facts of the case, the jury, I'm not saying the jury was irrational. The jury could find, based on the evidence that was presented, that he was, in fact, guilty. I mean, they had evidence that he made a statement, he had to ledger. They could do that. I ask, you know, this is such... I mean, if you read the record in this case where people were given four off a roll, four off for a cook, six off for 5K. I mean, people got down to... Mr. Mercado got... People got down to level 19s from a level 32. And just as an aside, two of the defendants, Havens and the co-defendant who went to trial, were the benefit of bad arithmetic by the district court judge. On both those individuals, he reduced the level from 32 to 30, even though he didn't give them a roll reduction. And nobody caught it, and they ended up getting the beneficiary of an extra, you know, two levels off because of, in effect, getting the roll reduction, even though he didn't grant them the roll reduction in both those cases. So we have a situation where my client is doing 14 years with no real prior record, where the most that anyone else did was 120 months, and that was a guy who also could not get safety eval, and his guideline range was 63 to 78 months, and he had to get 120 months. But everyone else got six split sentences, 60 days, six months, 30 months. And they're saying that those are the breaks of, you know, and to say that under these facts you don't get punished for going to trial, a guy with no record, goes to trial and gets 168 months. Okay, you've used up your time and a little bit more. Thank you for the argument. Both sides, the case just argued will be submitted in the court.
judges: Hug, Ferguson, Hawkins